1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BARBARA DOSS, et al.,

　　　　　　　Plaintiffs,

　　v.

COUNTY OF ALAMEDA, et al.,

　　　　　　　Defendants.

Case No.  19-cv-07940-SK

**ORDER DENYING IN PART AND
GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS**

Regarding Docket Nos. 8, 12, 13

　　　　Plaintiffs are the mother and three minor children, represented through their guardians *ad
litem*, of Dujuan Armstrong ("Plaintiffs" and "Armstrong," respectively), who died in custody at
the Santa Rita Jail in Dublin, California, on June 23, 2018.  (Dkt. 1.)  Plaintiffs bring suit against
the County of Alameda ("the County"), Sheriff Gregory Ahern ("Ahern"), Deputy Sheriff Joshua
Plosser ("Plosser"), Deputy Sheriff Kevin Calhoun ("Calhoun"), Deputy Sheriff Eduardo Rivera-
Velazquez ("Rivera-Velazquez"), Deputy Sheriff Monica Devine ("Devine"), Deputy Sheriff
Josephine Constanzo ("Constanzo"), Deputy Sheriff Dylan Green ("Green"), Deputy Sheriff Fnu
Moschetti ("Moschetti") (collectively, "Defendants;" collectively, excluding the County, the
"Deputy Sheriff Defendants").  (*Id.*)

　　　　Plaintiffs bring the following claims against Defendants: (1) pursuant to 42 U.S.C. § 1983,
for violation of the Fourth Amendment right to be free from excessive force ("Count One");
pursuant to 42 U.S.C. § 1983, (2) for violation of the Fourteenth Amendment right to familial
relationship ("Count Two"); (3) pursuant to 42 U.S.C. § 1983, for municipal liability against the
County and its officials for unconstitutional custom, policy, or practice, failure to train, and
ratification ("Count Three"); (4) pursuant to California Civil Code § 52.1, for punitive damages
for violation of rights under the California constitution ("Count Four"); and (5) for negligence
("Count 5").  (*Id.*)  Defendants move to dismiss the complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6), as Defendants allege that the Deputy Sheriff defendants have not been properly named and that Plaintiffs have not adequately liability for the County, excessive force, or deprivation of familial rights. (Dkt. 8.) Plaintiffs oppose the motion to dismiss. (Dkt. 12.)

Having considered the submissions of the parties, relevant legal authority, and the record in the case, the Court finds that this motion is suitable for decision without oral argument. For the reasons set forth below, the Court HEREBY GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

## BACKGROUND

Armstrong was sentenced to serve time in a criminal matter unrelated to this case. (Dkt. 1 ¶ 21.) Armstrong was sentenced to serve four months in increments over weekends at the Santa Rita Jail as part of the Jail Weekend Inmate Program at that facility. (*Id.*) On his second consecutive weekend of the program, Armstrong reported to the Santa Rita Jail on June 22, 2018, at 8:37 p.m. (*Id.*) Armstrong was cleared by intake staff and admitted for his weekend commitment despite the fact that he had consumed narcotics sometime before admission and was exhibiting symptoms of distress. (*Id.* ¶ 22.) That evening, Armstrong made several phone calls to his girlfriend; on those calls, his dialogue was limited and his responses were slow and disjointed. (*Id.* ¶ 23.) The next morning at approximately 5:25 a.m., Rivera-Velazquez and another deputy, Soto (not specifically named as a Defendant in the complaint) observed Armstrong, who had difficulty expressing coherent words to them. (*Id.* ¶ 24.) Soto informed the intake personnel about Armstrong's behavior. (*Id.*) Another deputy, Valentine (not specifically named as a Defendant in the complaint) observed Armstrong kneeling on all fours, barking, crying, and desperately yelling: "Help me!" (*Id.* ¶ 25.) No help was given to Armstrong at that time. (*Id.*) At 6:08 a.m. on June 23, 2018, Armstrong verbally notified deputies that he was "high." (*Id.* ¶ 26.) Hoodye recounts that Armstrong told him it was his first time being high, and Soto recalls that Armstrong had difficulty communicating even the simple statement that he was high to the deputies. (*Id.*)

By 7:20 a.m. on June 23, 2018, Armstrong was continuously banging on his cell door; he was moved to another cell, further from the nurses' station, so that he would not disturb their other work. (*Id.* ¶ 27.) At 7:31 a.m., nurses collected a urine sample from Armstrong. (*Id.* ¶ 28.) At

9:30 a.m., Armstrong was observed completely naked in his cell. (*Id.*) At 11:08 a.m., Townsend again observed Armstrong completely naked in his cell. and during their interaction, Armstrong again informed Townsend of the drugs he had consumed. (*Id.*) At 2:10 p.m., Bryning observed Armstrong, who was still naked in his cell, displaying symptoms of distress. (*Id.* ¶ 29.) At 2:20 p.m., Eastus observed Armstrong, who was still naked in his cell, behaving alarmingly. (*Id.* ¶ 30.) Around the same time, Moruza and Soto, who also witnessed Armstrong's behavior, informed the nursing staff that Armstrong needed medical attention. (*Id.* ¶ 31.) No records show that any medical assistance was given to Armstrong at that time. (*Id.*) At 2:36 p.m., Townsend observed that Armstrong as paranoid and seemed scared of everyone around him. (*Id.* ¶ 32.) At 3:00, though Armstrong appeared to have worsened, Valentine cleared him for further incarceration. (*Id.* ¶ 33.) At 3:31 p.m. the nursing staff informed Rivera-Velazquez that Armstrong needed to be transported to the Outpatient Housing Unit. (*Id.* ¶ 34.) Armstrong was not transferred and remained in his cell without any care. (*Id.*) At 6:30 p.m. on June 23, 2018, Defendants began to transport Armstrong to the Outpatient Housing Unit. (*Id.* ¶ 36.)

Armstrong was initially transported by Plosser, Rivera-Velazquez, and Calhoun. (*Id.* ¶ 37.) Shortly after the transportation began, Costanzo, Devine, and Green joined the transportation effort. (*Id.*) As he was being transported, Armstrong exhibited symptoms of paranoia and severe distress, including reluctance to be taken out of his cell to the Outpatient Housing Unit. (*Id.* ¶ 38.) During transportation, the Deputy Sheriff Defendants slammed Armstrong to the ground, striking him with their knees and feet. (*Id.* ¶ 39.) While he was on the ground, the Deputy Sheriff Defendants decided to place Armstrong in a WRAP device. (*Id.* ¶ 40.) Armstrong was "in a calm state" when the leg restraint portions of the device were applied. (*Id.*) Armstrong was handcuffed behind his back and sitting in an L-shaped position. (*Id.* ¶ 41.) The Deputy Sheriff Defendants pushed Armstrong's upper body toward his feet, applying force on his head, neck, shoulders, and back while placing him in the WRAP device.[1] (*Id.* ¶ 41.) Though he was not spitting, a spit mask was placed over Armstrong's head. (*Id.*) Moschetti performed a blood pressure check, which

---

[1] Plaintiffs' complaint does not define a WRAP device. For clarity, the Court will specify within the scope of this Order that a WRAP device is a full-body restraint consisting of a series of torso, arm, and leg restraints.

raised no concerns.  (*Id.* ¶ 42.)  Shortly thereafter, a nurse was unable to locate Armstrong's pulse.  (*Id.*)  Resuscitation efforts failed, and Armstrong was pronounced dead at 7:24 p.m. (*Id.*)

The coroner's report confirms that Armstrong died of positional asphyxia during restraint.  (*Id.* ¶ 43.)  A media hold was placed on the coroner's report for ever a year, rendering Armstrong's family unable to access the information it contains during that time.  (*Id.* ¶ 44.)  Plaintiffs allege that the officers involved were not disciplined as a result of their conduct toward Armstrong, and that the failure to discipline them demonstrates a custom and policy favoring deadly force, ratification of the use of deadly force, and failure to train officers not to employ deadly force.  (*Id.* ¶ 45.)

## ANALYSIS

### A.    Legal Standard.

Defendants bring their motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) authorizes a motion to dismiss where the pleadings fail to state a claim upon which relief can be granted.  When considering a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Rather, a plaintiff must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile.  *See, e.g.*,

United States District Court
Northern District of California

4

1    *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N.*

2    *Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

3    **B.     Discussion.**

4           **1.     Individual Defendants.**

5           Defendants first argue that Ahern and the Deputy Sheriff Defendants should be dismissed

6    as redundant defendants.  It is well established that "[n]aming state officials in their official

7    capacity is merely an alternative way of pleading an action against the entity of which the

8    defendant is an officer."  *Gripp v. Cty. of Siskiyou*, 2014 WL 7335674, at *4 (E.D. Cal. Dec. 19,

9    2014) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  "When both a municipal officer and a local

10   government entity are named, and the officer is named only in an official capacity, the court may

11   dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles*

12   *Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008).  As Plaintiffs point out, the individual

13   Defendants in this case are being sued both in their official capacities pursuant to 42 U.S.C. §

14   1983 and in their individual capacities under state law.  (Dkt. 12; Dkt. 1 ¶¶ 55-77.)  Thus, the

15   federal claims against the individual defendants should only be made against them in their official

16   capacities.

17          The Court thus GRANTS the motion to dismiss Counts One, Two, and Three, brought

18   under 42 U.S.C.§ 1983, against individual defendants in their individual capacities; those claims

19   will go forward against them only in their official capacities.  As to Ahern, the Court GRANTS

20   the motion to dismiss, as there are no specific factual allegations against him in his individual

21   capacity, and Plaintiffs sue him only in his official capacity in a redundant fashion.  The Court

22   DENIES the motion to dismiss the individual defendants in Counts Four and Five.  The Court thus

23   DENIES IN PART and GRANTS IN PART Defendants' motion to dismiss the individual officer

24   defendants.

25          **2.     Excessive Force.**

26          Defendants next contend that Plaintiffs have not stated a Fourth Amendment claim for

27   excessive force because Plaintiffs have not shown that the force used was objectively

28   unreasonable and because Plaintiffs have not attributed specific actions in the sequence of events

1   leading to Armstrong's death to particular Defendants.  (Dkt. 8.)

2          **i.      The facts alleged in the Complaint support unreasonableness.**

3          Plaintiffs have sufficiently alleged an unreasonable use of force.  When evaluating Fourth

4   Amendment Claims for excessive use of force, courts apply an objective reasonableness inquiry:

5   "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and

6   circumstances confronting them," with "allowance for the fact that police officers are often forced

7   to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving

8   – about the amount of force that is necessary in a particular situation."  *Graham v. Connor*, 490

9   U.S. 386, 397 (1989).  The typical analysis involves three steps, including assessment of (1) the

10  severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and

11  amount of force used; (2) the government's interest in the use of force; (3) the balance between the

12  severity of the intrusion and the level of government need.  *See Glenn v. Washington Cty.*, 673

13  F.3d 864, 871 (9th Cir. 2011).

14         The Complaint alleges that Defendants escorted an incapacitated, unarmed, handcuffed

15  man from one unit to another within their secure jail facility.  (Dkt. 1 ¶¶ 36-42.)  There were at

16  least six correctional officers involved in that task.  (*Id.* ¶ 37.)  The Complaint alleges that the way

17  the officers executed that task, including their decision to use a WRAP device and the manner in

18  which they used the WRAP device, caused Armstrong's death.  (*Id.* ¶ 42.)  The Ninth Circuit has

19  recognized excessive force claims brought "[u]nder similar circumstances, [where,] in what has

20  come to be known as "compression asphyxia," prone and handcuffed individuals in an agitated

21  state have suffocated under the weight of restraining officers."  *Drummond ex rel. Drummond v.*

22  *City of Anaheim*, 343 F.3d 1052, 1056–57 (9th Cir. 2003).

23         Here, as in *Drummond*, the Complaint alleges that the force employed was severe; the need

24  for it was minimal, as Armstrong was unarmed and suffering from a medical problem; Armstrong

25  was not engaged in the commission of a crime; and he stopped resisting the officers as the WRAP

26  device was applied.  *See* 343 F.3d at 1057-58; (Dkt. 1 ¶¶ 39-42).  As in *Drummond*, the Deputy

27  Sheriff Defendants here — "indeed, any reasonable person—should have known that squeezing

28  the breath from a compliant, prone, and handcuffed individual despite" his obvious distress

United States District Court
Northern District of California

6

"involves a degree of force that is greater than reasonable." *Id.* at 1059. Plaintiffs have adequately alleged facts to state a claim for the unreasonable and excessive use of force against Armstrong. The Court DENIES Defendants' motion to dismiss Plaintiffs' excessive force claim for failure to show unreasonableness.

### ii. The integral participant doctrine applies.

Plaintiffs have adequately stated an excessive force claim under the integral participant doctrine. "Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988) (citations omitted). When alleging that official conduct resulted in a deprivation of rights, a plaintiff must show a causal link between official acts and the alleged deprivation. *Id.* at 633. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode,* 423 U.S. 362, 370–71, 375–77 (1976)).

Simultaneously, multiple officers may be liable for the same conduct where each is an "integral participant" in the violation of a plaintiff's rights. *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996). The "integral participant" doctrine "extends liability to those actors who were integral participants in the constitutional violation, even if they did not directly engage in the unconstitutional conduct themselves." *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009). To support any theory on a motion to dismiss, a plaintiff need only marshal "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (quoting Twombly, 550 U.S. at 556).

Here, Plaintiffs have shown that Defendants committed the conduct at issue while acting under color of state law. *See Leer*, 844 F.2d at 633 (administration of prison is conduct under color of state law). Plaintiffs have alleged that six officers were involved in the fatal transport of Armstrong. (Dkt. 1 ¶ 40.) Though Plaintiffs do not specifically allege which officer performed

which exact movements in the sequence of events leading to Armstrong's death – *i.e.*, which officer "violently kneed and kicked" him at what time, which officer "forced [his] upper body towards his feet, which officers "applied force on [his] head, neck, shoulder and back," Plaintiffs have alleged that all six officers participated in some way in the transport.  (*Id.* ¶¶ 40-42.)  At this stage in the proceedings, Plaintiffs' allegations are sufficient to move forward.  Plaintiffs have adduced enough facts to raise a reasonable expectation that discovery will reveal with more particularity how each officer was specifically involved in the unconstitutional acts at issue.  The Court DENIES Defendants' motion to dismiss Plaintiffs' excessive force claim for lack of particularity regarding causation.

### 3. Fourteenth Amendment.

Defendants next argue that Plaintiffs' Fourteenth Amendment claim should be dismissed because it is conclusory, as Plaintiffs have not stated any facts which shock the conscience.  (Dkt. 8.)  To allege a claim for the Fourteenth Amendment for loss of familial relationship, Plaintiffs must allege that Defendants violated their substantive due process rights to family integrity or to familial association if there is  harmful conduct "shock[s] the conscience" or "offend[s] the community's sense of fair play and decency."  *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1079 (9th Cir. 2011) (internal citation and quotation omitted).  The "standard of culpability for a due process right to familial association claim" is whether the official conduct at issue shocks the conscience.  *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).  The conduct at issue must be "so brutal and offensive that it did not comport with traditional ideas of fair play and decency. *Briethaupt v. Abram*, 352 U.S. 432, 435 (1957).  Because "law enforcement officers confront a variety of circumstances that may lead to the use of force," courts considering whether official use of force shocks the conscience "dr[a]w a distinction between situations that evolve in a time frame that permits the officer to deliberate before acting and those that escalate so quickly that the officer must make a snap judgment."  *Porter*, 546 F.3d at 1137.  "When actual deliberation is practical," deliberate indifference may shock the conscience.  *Id.*  However, in "fast paced circumstances," only conduct that displays a purpose to harm unrelated to legitimate law enforcement objectives may be found to shock the conscience.  *Id.* at 1139-40.  "Whether conduct rises to the level of

1    'shock[ing] the conscience' is a question of fact for a jury to decide, not a question of law for the

2    Court." *Lu Huang v. Cnty. Of Alameda*, 2011 WL 5024641, at *5 (N.D. Cal. Oct. 20, 2011)

3    (denying motion to dismiss substantive due process claim).

4          Plaintiffs have stated a plausible claim for relief under the Fourteenth Amendment.  This

5    case presents significant questions of fact regarding whether the situation permitted deliberation

6    and whether Defendants' conduct in response to the situation was so brutal and offensive as to

7    shock the conscience.  As discussed above, Plaintiffs have alleged many facts that would tend to

8    demonstrate excessive force.  Defendants' conclusory assertion that these facts do not shock the

9    conscience is insufficient to support dismissal of the claim at this stage of the litigation.  The

10   Court DENIES Defendants' motion to dismiss Plaintiffs' claim.

11         **4.**     ***Monell* Liability.**

12         Finally, Defendants argue that Plaintiffs have not stated claims for municipal liability

13   under the standard articulated in *Monell v. Dep't of Social Services of City of New York*, 436 U.S.

14   658 (1978) ("*Monell*").  Plaintiffs' *Monell* claims are sufficient to survive Defendants' motion to

15   dismiss.  A local government unit may be held civilly liable under § 1983 where an alleged

16   constitutional violation is the result of policy or custom.  *Id.* at 690-91.  "To prevail on a *Monell*

17   claim, [a plaintiff] must 'establish: (1) that he possessed a constitutional right of which he was

18   deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate

19   indifference' to [plaintiff]'s constitutional right; and (4) that the policy is the 'moving force behind

20   the constitutional violation.'''  *Boss v. City of Mesa*, 746 F. App'x 692, 695 (9th Cir. 2018) (citing

21   *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).  "In this circuit, a claim of

22   municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the

23   claim is based on nothing more than a bare allegation that the individual officers' conduct

24   conformed to official policy, custom, or practice."  *Galbraith v. Cnty. of Santa Clara*, 307 F.3d

25   1119, 1127 (9th Cir. 2002) (citation omitted).  Yet some specificity is nevertheless required.  *See,*

26   *e.g.*, *Inman v. Anderson*, 294 F. Supp. 3d 907, 920 (N.D. Cal. 2018) (noting that while bare

27   allegations may suffice, the complaint nevertheless must allege a plausible claim for relief in

28   compliance with *Twombly* and *Iqbal*); *Martinez v. Monterey Cnty. Sheriff's Office*, 2019 WL

United States District Court
Northern District of California

9

1    176791, at *4 (N.D. Cal. Jan. 11, 2019) (rejecting *Monell* theory of liability where no specific

2    facts were alleged).

3           In their motion to dismiss, Defendants discuss at length the standards a plaintiff must meet

4    to *prevail* on a *Monell* claim based on theories of custom or policy, ratification, and failure to

5    train.  (Dkt. 8 pages 5-9.)  At this stage in the proceedings, however, Plaintiffs do not need to

6    prove victory on their *Monell* claims for those claims to survive.  All Plaintiffs must do is provide

7    bare allegations supported by some factual basis sufficient to establish a plausible claim for relief.

8    The Court concludes that Plaintiffs have adequately stated claims for *Monell* liability.

9           Plaintiffs' complaint states:

10          Plaintiffs are informed and believe and thereon allege that Alameda County, and DOES
       26-50, inclusive, breached their duty of care to the public in that they have **failed to**
11     **discipline** Defendant Officers PLOSSER, CALHOUN, RIVERA-VELAZQUEZ,
       DEVINE, CONSTANZO, GREEN, and DOES 1-25 inclusive, for their respective
12     misconduct and involvement in the incident described herein.  Their failure to discipline
       Defendant Officers PLOSSER, CALHOUN, RIVERA-VELAZQUEZ, DEVINE,
13     CONSTANZO, GREEN, and DOES 1-25 inclusive, **demonstrates the existence of an**
       **entrenched culture, policy or practice of promoting, tolerating and/or ratifying with**
14     **deliberate indifference, the use of excessive force** and/or deadly force used by Defendant
       Officers PLOSSER, CALHOUN, RIVERA-VELAZQUEZ, DEVINE, CONSTANZO,
15     GREEN, and DOES 1-25 inclusive, amounting to severe misconduct.  Plaintiffs further
       contend that this **includes failing to train said Defendants, and all or most Alameda**
16     **County Deputy Sheriffs, in how to avoid asphyxiating subjects during restraint,** in
       violation of standard law enforcement training.  Plaintiffs contend that **high level policy**
17     **makers, including Defendant AHERN, and other policy makers, were aware of the**
       **deficiencies in training in how to avoid asphyxiation during restraint**, but nonetheless
18     permitted Alameda County Deputies to work in situations where they would routinely be
       expected to conduct restraints of inmates, thereby foreseeably exposing inmates supervised
19     by Alameda County deputies to the foreseeable risk of being killed by being unreasonably
       asphyxiated during restraint.
20

21

22   (Dkt. 1 ¶ 45) (emphases added).  Defendants contend that these allegations are flawed because

23   Plaintiffs do not cite a prior incident similar to the facts at issue here.  However, this "argument is

24   legally inaccurate.  *See Brown*, 520 U.S. at 409, 117 S. Ct. 1382 (noting that evidence of a single

25   violation of federal rights can, in some circumstances, trigger municipal liability)."  *Castro v. Cty.*

26   *of Los Angeles*, 833 F.3d 1060, 1074 n.7 (9th Cir. 2016) (citing *Bd. of Cty. Comm'rs of Bryan*

27   *Cty., Okl. v. Brown*, 520 U.S. 397 (1997).  Plaintiffs allege that there is an "official policy – rooted

28

United States District Court
Northern District of California

10

in an entrenched posture of deliberate indifference to [… constitutional rights" adopted by the Alameda County Sheriff's Department, and that this custom or policy is exhibited in "a pattern and practice of using excessive force." (Dkt. 1 ¶¶ 47-48.)  Plaintiffs make the specific factual allegations that the Deputy Sheriff Defendants were not disciplined as a result of Armstrong's death; they argue that this fact tends to support the existence of a custom of use of excessive force and its ratification.  (Dkt. 1 ¶ 45.)  Plaintiffs also specifically allege that Defendant Ahern knew of deficiencies in the Alameda County Sheriff's Department's training program regarding compression asphyxia, and yet did nothing to alleviate the problem, also showing a custom or practice of unconstitutional use of force.  (*Id.*)  Though not detailed, Plaintiffs' allegations present specific facts that, if Plaintiffs are able to prove them using discovery, will tend to support their *Monell* claims.  The low bar for the survival of *Monell* claims on a motion to dismiss – bare allegations supported by sufficient facts to state a plausible claim for relief – is cleared here. Defendants motion to dismiss Plaintiffs' *Monell* claims is DENIED.

## CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

**IT IS SO ORDERED**.

Dated: April 16, 2020

_____

SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California