**JOHN L. BURRIS, ESQ., SBN 69888**
**BEN NISENBAUM, ESQ., SBN 222173**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Center
7677 Oakport Street, Suite 1120 Oakland, CA 94621
Telephone:  (510) 839-5200
Facsimile:  (510) 839-3882
Email: John.Burris@johnburrislaw.com
Email: Ben.Nisenbaum@johnburrislaw.com
Email: Lateef.Gray@johnburrislaw.com

Attorneys for Plaintiffs

**NOAH G. BLECHMAN (State Bar No. 197167)**
noah.blechman@mcnamaralaw.com
**RANDOLPH S. HOM (State Bar No.152833)**
randolph.hom@mcnamaralaw.com
**MCNAMARA, NEY, BEATTY, SLATTERY,**
**BORGES & AMBACHER LLP**
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
Telephone: (925) 939-5330
Facsimile:  (925) 939-0203

Attorney for Defendants

County of Alameda, "FNU" Moshcetti, Joshua Plossner,
Kevin Calhoun, Eduardo Rivera-Velazquez, Monica Devine,
Josephine Constanzo, and Dylan Green

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Barbara Doss, individually; B.A., co-successor-in-interest to Decedent Dujuan Armstrong, by and through his Guardian Ad Litem Lilly Coleman; J.L.J.A., co-successor-in-interest to Decedent Dujuan Armstrong, by and through her Guardian Ad Litem Janae Cook; O.A., co-successor-in-interest to Decedent Dujuan Armstrong, by and through his Guardian Ad Litem Chastity Williams, | CASE NO.: C19-cv-07940-SK<br><br>**JOINT INITIAL CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>**Conference Date**: July 27, 2020<br>**Time:** 1:30 p.m.<br>**Location**: San Francisco Courthouse<br>**Method**: Unknown<br><br>**Trial Date**:  None Set<br><br>Magistrate Judge Sallie Kim |

|   |   |
|---|---|
| Plaintiffs, | |
| vs. | |
| County of Alameda, et al., | |
| Defendants. | |

Pursuant to the Courts Status Order, the parties submit the following Joint Initial Case Management Conference Statement.

### 1. Jurisdiction and Service:

Plaintiff filed this case in federal court and assert federal question jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§1391(b), along with state law claims.  Defendants do not contest federal jurisdiction, personal jurisdiction or venue.  All named parties have been served.

### 2. Facts:

#### a. Plaintiffs' Contentions

On June 23, 2018, Defendant Deputies Moschetti, Plosser, Calhoun, Rivera-Velazquez, Devine, Constanzo, and Green conducted a physical restraint of Decedent Du'Juan Armstrong in custody at Santa Rita Jail that included manual restraint and chest/diaphragm/abdominal compression, causing him to be asphyxiated and killing him.  Mr. Armstrong had told jail workers that he had ingested narcotics and was intoxicated, and had been exhibiting bizarre behavoir at the jail for nearly 24 hours, finally causing jail staff to deterimine that he be placed in a medical housing unit.  Mr. Armstrong, who appeared to be paranoid and delusional, did not comply with Defendants efforts to remove him from his jail cell for the transport to the medical unit.  Defendants forced Mr. Armstrong out of his cell and began moving him toward the medical housing unit.  Mr. Armstrong, who remained in the same paranoid and delusional state, did not voluntarily comply with the defendants, who then slammed him down to the ground and began striking Mr. Armstrong with their knees and feet, and began restraining him using prone restraint methods.  Defendants then forced Mr. Armstrong into a seated "L" position.   Defendants put a spit hood on Mr. Armstrong (Plaintiffs are

not aware of any evidence that he had been spitting), which covered Mr. Armstrong's head, and placed the WRAP device over Mr. Armstrong's entire body, while still handcuffing him. An initial vitals check by a nurse did not raise any alarms, but a second nurse check Mr. Armstrong's pulse shortly after the first check, and could find no pulse. Rescuscitation efforts were ineffective, and Mr. Armstrong was pronounced dead at 7:24 p.m. The initial decision to move Mr. Armstrong to the medical unit was made less than an hour before, at about 6:30 p.m.

At autopsy, Petecheal hemmorhages, an indicator of compression-asphyxiation, were found in Mr. Armstrong's eye, and his death was determined by the Alameda County Coroner's Office pathologist who conducted his autopsy to have been caused by mechanical asphyxiation. While cocaine and marijuana metabolites were found in the toxicological samples, these did not contribute to Mr. Armstrong's death, according to the autopsy report[1].

### b. Defendants' Version of Events

This is a wrongful death action regarding an in custody incident (and then later death) of Dujuan Armstrong ("Armstrong"), a twenty-three year old male, at the Outpatient Housing Unit ("OPHU") of the Santa Rita Jail (SRJ) on June 23, 2018. During transport to OPHU, Alameda County Sheriff Office ("ACSO") deputies used force to control Armstrong, including the deployment of the WRAP leg restraint and spit mask. Subsequent to the use of force, Armstrong died. The County Coroner determined that Armstrong tested positive for narcotics, and died of asphyxiation.

The lawsuit was filed by the Law Offices of John L. Burris. Per the Complaint, Plaintiffs include Barbara Doss, the surviving mother of Armstrong, and his four surviving minor children, B.A., J.L, J.A., and O.A, whose interests are represented by three separate Guardians Ad Litem, namely Lilly Coleman, Janae Cook, and Chastity Williams. Defendants that are named are the County of Alameda, Sheriff Gregory Ahern, and ACSO deputies "FNU" Moschetti, Joshua Plosser,

---

[1] Defendants assert that so-called "Excited Delirium Syndrome" may have contributed to Mr. Armstrong's death. Coincidentally, The Washington Post published an article yesterday, Sunday, July 19, 2020 dismissing Excited Delirium as a phony excuse for police misconduct based on junk science. See "Police Keep using 'excited delirium' to justify brutality. It's junk science." Sub-heading: "The 'diagnosis' misappropriates medical terminology to shield officers from accountability." Online at: https://www.washingtonpost.com/outlook/chokehold-police-excited-delirium/2020/07/17/fe907ec8-c6bc-11ea-b037-f9711f89ee46_story.html

Kevin Calhoun, Eduardo Rivera-Velazquez, Monica Devine, Josephine Constanzo, and Dylan Green. The County and ACSO deputies were served and filed a Motion to Dismiss as to particular causes of action in this case - the excessive force claim under the Fourth Amendment, the due process claim under the Fourteenth Amendment, and the *Monell* claim.  The Motion was granted in part and denied in part. (ECF 18; ECF 24.)  Sheriff Gregory Ahern was dismissed from the action. The Defendants have answered the operative complaint and this case is at issue.

Armstrong was convicted of burglary and sentenced to serve 120 days in jail. He was authorized to complete his jail time on weekends.  On June 22, 2018, Armstrong arrived at the jail at 8:37 p.m.  He was not provided a medical assessment since he answered "no" to all medical questions.  Based on observations, at 10:15 p.m. he was transferred to a "sobering" cell. Armstrong received a medical evaluation approximately 8 hours later. On June 23rd at 6:00 a.m. Armstrong admitted to an ACSO deputy that he was under the influence of narcotics.  Several ACSO deputies suspected that Armstrong had ingested narcotics and/or possibly had drugs in his rectum while at the jail (e.g. on June 23rd at 3:30 p.m., ACSO deputy Valentine observed Armstrong "on all fours screaming for help", growling, crying, stripping off his clothes, placing his finger into his anus then his mouth and chewing on the toilet). At 7:31 a.m., his urine sample was taken, and tested at 2:00 p.m. The sample tested positive for cocaine, methamphetamine and marijuana.  A medical assessment of Armstrong was completed at 2:36 p.m.

During Armstrong's transport to the OPMU, he physically resisted deputies while he was handcuffed, including attempting to walk in the opposite direction, pushing back on the ACSO deputies, attempting to run from deputies, and attempting to trip deputies.  In order to control Armstrong and overcome his resistance, and to protect themselves, ACSO deputies used force including closed fist strikes and knee strikes.  While deputies tried to get him into the WRAP. During the application of the WRAP leg restraint, Armstrong continued to resist, pushing his body back towards the deputies. To secure the WRAP, six deputies pushed/pulled Armstrong's upper body and head forward, using their body weight in order to secure the WRAP.  Ultimately, the straps were tightened to hold Armstrong in this position. The spit mask was also applied to Armstrong.

On June 25th, Dr. Magat, the Medical Director of CFMG, opined that cardiopulmonary arrest was the preliminary cause of death. She noted that Armstrong was 5'11" and weighed 271 pounds. At intake, he appeared angry and uncooperative. His drug screen confirmed the presence of marijuana, cocaine, and methamphetamine. She also noted that he became increasingly agitated and resistive while being transported to OPHU resulting in ACSO deputies using force to retain him.

The autopsy of Armstrong was conducted by Dr. M. Ferenc, a forensic pathologist. The findings indicated that Armstrong had preexisting pulmonary congestion, cardiac hypertrophy and dilation, and borderline severe obesity. Petechiae were located in his eye and minor external injuries were located on his wrist and hand. Armstrong's toxicology results were positive for cocaine metabolite and marijuana metabolite. Coupled with his severe obesity, preexisting heart issues, agitation, and physical exertion, his toxicology results suggest that excited delirium contributed/caused his death. Dr. Ferenc concluded that Armstrong's drug use did not contribute to his death, and determined that the cause of death was mechanical asphyxia.

**3. Legal Issues**

The Complaint currently asserts the following federal claims against Defendants: 1) Section 1983 excessive force; 2) Fourteenth Amendment right to familial relationship; and 3) Section 1983 unconstitutional policy, custom or practice (*Monell*). In addition, the Complaint asserts the following state law claims: 1) violation of California Civil Code section 52.1 (Bane Act); and 2) negligence.

These claims raise at least the following issues: 1) whether defendants used objectively reasonable force in an attempt to physically control Plaintiffs' Decedent; 2) whether the individual officer defendants violated Plaintiffs Decedent's civil rights including access to medical care, and whether such violations were reckless or intentional for purposes of the Bane Act claim; 3) whether the individual officers are entitled to qualified immunity and/or state law immunity and/or other defenses; 4) whether Plaintiffs can demonstrate any potential *Monell* claim against the City; whether the individual defendant deputies breached their duty of care to Plaintiffs' Decedent.

**4. Motions**

The parties believe a Stipulated Protective Order will be filed in this matter to protect any confidential records that are to be disclosed in this litigation..

Defendants will be evaluating the filing of a dispositive motion for summary judgment and/or partial summary judgment at the appropriate time. Numerous motions in limine are contemplated. No other motions are currently contemplated at this early stage.

**5. Amendment of Pleadings**

Subsequent to the Court granting the Defendants' Motion to Dismiss in part, and Plaintiffs' compliance with the related Order. Plaintiffs will need to amend the Complaint further to more specifically state the identity of Defendant Moschetti, whose first name is unknown, once that becomes known to Plaintiffs early in discovery.

**6. Evidence Preservation**

Counsel for the parties represent that they have taken steps necessary to preserve evidence relevant to the issues reasonably evident in this action since this lawsuit was brought by Plaintiff.

**7. Disclosures**

Plaintiffs and Defendants anticipate that they will make their respective initial disclosures on or before August 7, 2020.

**8. Discovery**

The parties have not served written discovery, or set dates for depositions. They do not currently anticipate the need for additional written discovery or depositions beyond that permitted by the Rules, but will approach the Court regarding additional discovery if necessary.

Plaintiffs will submit written discovery to Defendant County, focusing on the subject-incident and video of it, and related policies and training, as well as the individual personnel records of the named defendant deputies. Plaintiffs will depose each defendant, and may depose several PMK witnesses regarding training and policies related to the subject-incident.

Defendants anticipate performing the following discovery in this matter: Written discovery to Plaintiffs, the deposition of Plaintiffs, the depositions of percipient or material witnesses regarding the subject incident and/or any damages or liability related issues, the depositions of any relevant

treating physicians and/or medical providers of Plaintiffs and Plaintiffs' Decedent and the subpoena of relevant records pertaining to issues in this case. There will likely be a need for each side to take more than ten depositions in this case and the parties will seek leave of Court should discovery approach those levels and/or if there is such a need.

### 9. Class Actions

This matter is not a class action.

### 10. Related Cases

The parties are unaware of any related cases.

### 11. Relief

Plaintiffs are seeking general, special, and punitive damages in an unspecified amount, costs, attorneys' fees, and injunctive relief.

Defendants dispute that Plaintiffs are entitled to any relief or monetary damages in this action, or any injunctive relief. Defendants reserve the right to seek costs of suit against Plaintiffs should Defendants be determined to be the prevailing party.

### 12. Settlement and ADR

The parties are in agreement to participate in an early settlement conference before Magistrate Judge Laurel Beeler and have recently stipulated to that process. ECF 29.

### 13. Consent to Magistrate Judge for All Purposes

The parties have all consented to a Magistrate Judge.

### 14. Other References

The parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 15. Narrowing of Issues

Defendants will be seeking to narrow the issues in this matter via the discovery process and any stipulations that can be attained during the discovery process, as well as via the filing of any dispositive motions, or other motions, up to the time of trial. Plaintiffs contend that all issues pled are properly before the Court and will be ripe for trial.

**16. Expedited Trial Procedure**

This is not the type of case that can be handled in an expedited fashion.

**17. Scheduling**

| Case Event | Proposed Date/Disclosure Deadline/Hearing Date |
|---|---|
| Deadline to seek leave to add new parties or amend the pleadings | August 31, 2020 |
| Updated Joint Case Management Conference Statement due filed | October 15, 2020 |
| ADR Completion Date | December 18, 2020 |
| Non-expert discovery completion date | February 26, 2021 |
| Expert disclosures required by Federal Rule of Civil Procedure | March 5, 2021 |
| Rebuttal expert disclosures | March 19, 2021 |
| Expert discovery completion date | May 28, 2021 |
| Last hearing date for dispositive motions | July 12, 2021 |
| Final pretrial conference | November 12 2021 |
| Trial | December 6, 2021 |
| Length of trial | 10-12 days |

**18. Trial**

The parties demand a trial by jury. The parties anticipate a 10 to 12 day jury trial.

**19. Disclosure of Non-Party Interested Entities or Persons**

The parties are not aware of any non-party interested entities or persons.

**20. Professional Conduct**

All attorneys of record for the parties represent that they have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21. Other Matters**

None known at this time.

The parties attest that concurrence in the filing of these documents has been obtained from each of the other Signatories, which shall serve in lieu of their signatures on the document.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: July 20, 2020 | **THE LAW OFFICES OF JOHN L. BURRIS** |
| 3 | | /s/ Ben Nisenbaum |
| 4 | | John L. Burris |
| | | Ben Nisenbaum |
| 5 | | Lateef H. Gray |
| 6 | | Attorneys for Plaintiffs |
| 7 | | |
| 8 | Dated: July 20, 2020 | **MCNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP** |
| 9 | | /s/ Noah G. Blechman |
| 10 | | Noah G. Blechman |
| 11 | | Randolph S. Hom |
| | | Attorney for Defendants |