IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA DOSS, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>   Defendants. | Case No. 19-cv-07940-CRB<br><br>**ORDER GRANTING PETITIONS FOR MINORS' COMPROMISES** |

Petitioners Lilly Coleman and Chastity Williams, the guardians ad litem of minors B.A. and O.A., respectively, petition the Court for an order approving the compromise of the minors' claims against Defendant County of Alameda arising from the death of their father Dujuan Armstrong while in custody. Dkts. 96, 97. The minors bring claims under 42 U.S.C. § 1983, California Civil Code § 52.1, California Government Code § 845.6, and the common law. FAC (dkt. 54). The petitions are unopposed, see dkt. 102, and the Court finds them suitable for determination without oral argument. See Civ. L.R. 7-1(b). Because the Court finds the settlement fair and reasonable and in the best interest of the minors, the Court GRANTS the petitions.

**I.    BACKGROUND**

Plaintiffs allege that, while the County detained Armstrong at Santa Rita Jail on June 23, 2018, law enforcement officers acted with deliberate indifference for almost 24 hours to his need for medical help, resulting in his death. Dkt. 96 at 4–5. During that time, Armstrong repeatedly requested medical help, and the deputies and nurses at the jail failed to provide medical assistance. Id. at 3. When Defendants transported Armstrong to the

1   Outpatient Housing Unit that evening, Armstrong grew more agitated and distressed. Id. at
2   4. Defendants began using excessive force and restraint, including "slamm[ing] Armstrong
3   down to the ground" and "violently striking [Armstrong] with their knees and feet." Id. at
4   5. Defendants then handcuffed Armstrong behind his back and applied force to his head,
5   neck, shoulders, and back, placed Armstrong in a WRAP device, and placed a spit mask
6   over his head. Id. The coroner's report stated that Armstrong died from asphyxiation
7   during this restraint. Id. After Armstrong's death, Plaintiffs allege that county officials
8   placed a "media hold" on the coroner's report, preventing Plaintiffs from accessing
9   information about Armstrong's death for over a year. Id.

10  The gross settlement in the case is $2,700,000. Dkt. 96, 97 ¶ 2. Of that amount,
11  B.A. and O.A. shall each receive a net settlement of $748,382.95. Id. ¶ 3(c). That amount
12  is one-third of the settlement ($900,000) each, less attorney's fees of $150,000 each, and
13  litigation costs of $1,617.05 each. Id. ¶ 3. Each settlement is structured as a tax-free
14  structured settlement annuity policy. Id. ¶ 4-5.

15  For B.A., who is ten years old, guardian ad litem Lilly Coleman will receive $3,000
16  monthly for seven years and seven months (from November 1, 2022 to May 1, 2030). Dkt.
17  97 ¶ 5(a)(1)(a). Beginning June 1, 2030, B.A. will receive $5,000 monthly for twelve
18  years. Id. ¶ 5(a)(2)(a). B.A. will also receive guaranteed lump sums of $20,000 on May
19  12, 2034, $40,000 on May 12, 2037, and $144,770.70 on May 12, 2042. Id. ¶ 5(a)(2)(b)–
20  (d).

21  For O.A., who is three years old, guardian ad litem Chastity Williams will receive
22  $1,825 monthly for fourteen years and four months (from November 1, 2022 to February
23  1, 2037). Dkt. 96 ¶ 5(a)(1)(a). Beginning March 1, 2037, O.A. will receive $5,000
24  monthly for twelve years. Id. ¶ 5(a)(2)(a). O.A. will also receive guaranteed lump sums of
25  $75,000 on February 11, 2041, $100,000 on February 11, 2044, and $378,085.27 on
26  February 11, 2049. Id. ¶ 5(a)(2)(b)–(d).

27  **II.   LEGAL STANDARD**
28  Federal Rule of Civil Procedure 17(c) requires that district courts take special care

1    to safeguard the interests of minor litigants. See Fed. R. Civ. P. 17(c); Robidoux v.
2    Rosengren, 638 F.3d 1177, 1181 (9th Cir. 2011). To that end, Rule 17(c) obliges district
3    courts to conduct an independent "inquiry to determine whether the settlement serves the
4    best interests of the minor," Robidoux, 638 F.3d at 1811 (internal quotation marks
5    omitted), even when that "settlement has been recommended or negotiated by the minor's
6    parent or guardian ad litem." Salmeron v. United States, 724 F.2d 1357, 1363 (9th Cir.
7    1983). Accordingly, when evaluating a proposed settlement of minors' claims, district
8    courts must consider whether the proposed settlement is fair and reasonable as to each
9    minor plaintiff. Robidoux, 638 F.3d at 1181.

10        The Ninth Circuit has not expressed a view as to the proper approach for courts to
11   use when approving settlement of a minor's claims arising under state law. See id. at 1179
12   n.2. "Nevertheless, district courts have found the Robidoux rule reasonable in the context
13   of state law claims and have applied the rule to evaluate the propriety of a settlement of a
14   minor's state law claims as well." Nephew v. Santa Rosa Mem'l Hosp., 15-cv-1684, 2015
15   WL 5935337, at *2 (N.D. Cal. Oct. 13, 2015) (quoting Frary v. Cnty. of Marin, 12-cv-
16   3928, 2015 WL 575818, at *2 (N.D. Cal. Feb. 10, 2015)).

17        The Court thus applies the Robidoux rule to evaluate the settlement of all of the
18   minors' claims in this case. Frary, 2015 WL 3776402, at *2. When assessing the fairness
19   of the minors' settlements, following Robidoux, the Court does not make a determination
20   as to whether the amounts allocated to the adult plaintiff in this case, nor the attorneys'
21   fees, are fair or reasonable. 638 F.3d at 1182. "So long as the net recovery to each minor
22   plaintiff is fair and reasonable in light of their claims and average recovery in similar
23   cases, the district court should approve the settlement as proposed by the parties." Id. at
24   1182.

25   **III.   DISCUSSION**

26        The Court finds the settlement fair and reasonable and in the best interest of O.A.
27   and B.A. First, the parties believe that the settlement is fair and reasonable, as evidenced
28   by the fact that the Defendant has not opposed the petitions. Dkt. 102. Second, Plaintiffs

have organized the settlement so O.A. and B.A. will receive regular annuity payments—an oft-used means of distribution of settlements with minors—first through their guardians ad litem until they turn eighteen, then with regular payments of $5,000 monthly for twelve years, and through three guaranteed lump sum payments. Dkt. 96 at 7–8; Dkt. 97 at 7. Third, given that recovery in similar cases varies widely, the Court finds a net recovery of $748,382.95 each for O.A. and B.A. to be fair and reasonable under the circumstances. See, e.g., Cotton ex rel. McClure v. City of Eureka, 08-cv-4386, 2012 WL 6052519, at *2 (N.D. Cal. Dec. 5, 2012) (approving a minor's net recovery of $2,646,765.90 after a jury verdict for claims related to her father's death after a beating by police); Reyes ex rel. Servin v. City of Pinole, 12-cv-2636, 2013 WL 3157902, at *2 (N.D. Cal. June 20, 2013) (awarding $200,000 to a minor for claims for civil rights violations following a physical assault by police that resulted in the death of the minor's father); Frary, 2015 WL 575818, at *3 (approving a minor's net recovery of $69,229.11 for claim against the County of Marin and its employees for failing to provide medical care to her father, resulting in his death); Hagan v. Cal. Forensic Med. Grp., 07-cv-1095, 2013 WL 461501, at *1 (E.D. Cal. Feb. 5, 2013) (finding $15,000 net recovery reasonable for claims relating to the death of the minor's father when he was denied medication while in jail), report and recommendation adopted, 2013 WL 552386 (E.D. Cal. Feb. 12, 2013); Armstrong v. Dossey, 11-cv-1632, 2013 WL 4676541, at *5 (E.D. Cal. Aug. 30, 2013) (finding $11,000 and $22,500 net recovery reasonable for the claims of two minor sons whose father died after the county jail failed to provide medical care); Swayzer v. City of San Jose, 10-cv-3119, 2011 WL 3471217, at *1 (N.D. Cal. Aug. 5, 2011) (awarding $2,054 to a minor for claims relating to the death of his father while in police custody).

**IV.   CONCLUSION**

For the foregoing reasons, the Court finds that the proposed settlement is fair and reasonable, and the petitions for this Court's approval of these minors' compromises are GRANTED.

Additionally, the Court orders as follows:

4

1. The settlement shall be distributed in the following manner:

   a. Of the total $2,700,000 settlement, $1,203,234.10 shall be immediately payable to the Law Office of John L. Burris Client Trust Account for immediate cash, funding for court blocked accounts, attorneys' fees, and litigation costs;

   b. Of the total $2,700,000 settlement, $748,382.95 shall be payable to New York Life Insurance Company, to fund the structured settlement annuity for O.A.;

   c. Of the total $2,700,000 settlement, $748,382.95 shall be payable to Metlife Assignment Company, to fund the structured settlement annuity for B.A.;

2. Defendants and Petitioner Chastity Williams shall execute a Settlement Agreement and Release for O.A. that assigns the obligation to make periodic payments to New York Life Insurance and Annuity Corporation ("Assignee"). The Assignee shall purchase a structured settlement annuity for $748,382.95 for O.A.

3. Defendants and Petitioner Lilly Coleman shall execute a Settlement Agreement and Release for B.A. that assigns the obligation to make periodic payments to Metlife Assignment Company, Inc ("Assignee"). The Assignee shall purchase a structured settlement annuity for $748,382.95 for B.A.

4. The following periodic payments shall made by New York Life Insurance Company:

   a. To payee Chastity Williams, guardian ad litem to O.A.:

      i. $1,825 monthly beginning on November 1, 2022, payable for fourteen years and four months guaranteed, through February 1, 2037.

   b. To payee O.A.:

      i. $5,000 monthly beginning on March 1, 2037, payable for twelve years guaranteed, through February 1, 2049; and

      ii. A guaranteed lump sum of $75,000 paid on February 11, 2041;

      iii. A guaranteed lump sum of $100,000 paid on February 11, 2044; and

      iv. A guaranteed lump sum of $378,085.27 paid on February 11, 2049.

5. The following periodic payments shall be made by Metropolitan Tower Life Insurance Company:

   a. To payee Lilly Coleman, guardian ad litem to B.A.:

5

        i.     $3,000 monthly beginning on November 1, 2022, payable for seven years and seven months, through May 1, 2030.

    b.     To payee B.A.:

        i.     $5,000 monthly beginning on June 1, 2030, payable for twelve years guaranteed, through May 1, 2042; and

        ii.     A guaranteed lump sum of $20,000 paid on May 12, 2034;

        iii.     A guaranteed lump sum of $40,000 paid on May 12, 2037; and

        iv.     A guaranteed lump sum of $144,770.70 paid on May 12, 2042.

6.     No part of either structured settlement annuity may be paid to Petitioners Chastity Williams and Lilly Coleman, except the monthly payments set forth herein. Said monthly funds distributed to Petitioners shall be used exclusively for the benefit of O.A. and B.A., respectively.

7.     Should a delay of up to 60 days from the date of this Order in funding either annuity result in a nonmaterial delay of payment dates or change in payment amounts, no court order need be obtained to effectuate a corresponding change in the settlement agreement and release, assignment documentation, or annuity contract.

8.     The parties shall promptly file a stipulated dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(ii).

**IT IS SO ORDERED.**

Dated: October 7, 2022

_____
CHARLES R. BREYER
United States District Judge