JOHN L. BURRIS, ESQ., (SBN 69888)
BEN NISENBAUM, ESQ., (SBN 222173)
JAMES COOK, ESQ., (SBN 300212)
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Center
7677 Oakport Street, Suite 1120 Oakland, CA 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
Email: John.Burris@johnburrislaw.com
Email: Ben.Nisenbaum@johnburrislaw.com
Email: James.Cook@johnburrislaw.com
Attorneys for Plaintiffs
BARBARA DOSS, et al.

Austin R. Kessler (PRO HAC VICE)
Lindsey Romano (SBN 337600)
Kendra Stark (SBN 363663)
GORDON REES SCULLY MANSUKHANI
150 Fayetteville Street, Suite 1120,
Raleigh, NC 27601
akessler@grsm.com
lromano@grsm.com
kstark@grsm.com
Attorneys for Defendants
WELLPATH, INC., MICHAEL DURBIN
MICHAEL NARIA, MARIA SADRI, and NEENA THOMAS

Peter G. Bertling (SBN 131602)
Bertling Law Group
21 East Canon Perdido Street, Suite 204B
Santa Barbara, CA 93101
Telephone: 805-879-7558
Facsimile: 805-869-1597
peter@bertlinglawgroup.com
Attorney for Defendant Guadalupe Garcia

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BARBARA DOSS, et al.,<br><br>Plaintiffs, | CASE NO.: 3:19-cv-07940-CRB<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT** : ORDER |

vs.

COUNTY OF ALAMEDA, et al.,

Defendants.

**Conference Date**: July 31, 2026

**Trial Date**: TBD

Hon. Charles R. Breyer

Pursuant to the Court's Order at Docket No. 163, the Parties submit the following Case Management Conference Statement.

## 1. Jurisdiction and Service

Plaintiffs filed this case in federal court and assert federal question jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1391(b). All defendants have been served. On November 28, 2022, the Court dismissed Defendants COUNTY OF ALAMEDA, JOSHUA PLOSSER, KEVIN CALHOUN, EDUARDO RIVERA-VELAZQUEZ, MONICA DEVINE, JOSEPHINE CONSTANZO, DYLAN GREEN, and ANTHONY MOSCHETTI, with prejudice.

## 2. Facts

### a. Plaintiffs' Contention

The incident took place on June 23, 2018. The location of the incident was Santa Rita 5325 Broder Blvd, Dublin, CA 94568. Santa Rita Jail deputies and Wellpath medical staff caused Armstrong to die as a result of excessive force and deliberate indifference to Armstrong's medical needs.

As part of sentencing in an unrelated criminal matter, Decedent was to serve time by reporting to the Jail Weekend Inmate Program at Santa Rita Jail. The incident in question took place on Decedent's second consecutive weekend reporting to Santa Rita Jail. Decedent had four months to serve in weekend increments at Santa Rita Jail. Upon reporting to Santa Rita Jail, Decedent was cleared and admitted for his weekend commitment by Alameda County Sheriff's Office's intake staff, in spite of having ingested narcotics sometime before admission and exhibiting clear symptoms that he was under distress.

On June 23, 2018, at approximately 5:25 a.m., Defendant RIVERA-VELAZQUEZ and witness, Deputy Soto, observed Decedent, who had difficulty expressing coherent words to the deputies. Deputy Soto told the Intake Deputies about Decedent's behavior. Deputy Valentine, who began his shift at 5:00 a.m. on June 23, 2018, observed decedent yell "Help me!", with Decedent's behavior worsening, as he kneeled on all fours, cried and desperately continued yelling out "Help me!" Nonetheless, there is no record that suggests that any help was given to Decedent at this time.

Around 7:20 a.m., deputies advised WELLPATH Nurse GUADALUPE GARCIA that ARMSTRONG needed medical help. Deputies requested GARCIA check on ARMSTRONG. GARCIA knew, or should have known, that ARMSTRONG was suffering from the effects of illicit drugs. At approximately 7:31 a.m., GARCIA collected a urine sample from Decedent, without incident. While collecting the sample, ARMSTRONG was incoherent and slow to respond. However, GARCIA failed to do a medical intake on ARMSTRONG at this time. By around 8:00 a.m., Armstrong told Officer Hoodye that he had ingested multiple substances, and did not feel well. Over the next several hours, Armstrong alerted multiple deputies of his worsening condition, and asked for medical help. However, the deputies and nurses failed to render any medical assistance to Armstrong.

By approximately 2:20 p.m., deputies and nursing staff observed ARMSTRONG sticking his fingers in his mouth and his anus. At that point GARCIA finally tested his urine. A preliminary drug screening test revealed ARMSTRONG had consumed cocaine, methamphetamine, and marijuana. Nurse GARCIA still failed to provide medical care to ARMSTRONG. At approximately 2:36 p.m., Defendant Deputy Townsend observed Decedent's behavior and noted it to be "associated with being paranoid and scared of everyone around him." Nurse GARCIA and Nurse MARIA SADRI then attempted to complete ARMSTRONG'S triage intake screening. GARCIA and SADRI witnessed ARMSTRONG exhibiting unusual behavior. ARMSTRONG was naked and slowly put his hands out

of the cuffing port. His actions were indicative that he was suffering from a medical emergency. Nonetheless, no recorded aid of any sort was provided to Decedent during this time of crisis.

At approximately 3:00 p.m., Deputy Valentine reported that even though Decedent's condition had worsened, he was cleared for further incarceration. Around this time, nurses first alerted Nurse MICHAEL DURBIN that ARMSTRONG was under the influence of illicit drugs. DURBIN and nurse MICHAEL NARIA performed a visual check of ARMSTRONG. They witnessed ARMSTRONG appear "zombie like." DURBIN and NARIA failed to take ARMSTRONG'S vitals or provide any medical care to him at that time. Shortly thereafter, DURBIN contacted the Outpatient Housing Unit (OPHU). DURBIN spoke to FNP NEENA THOMAS. ARMSTRONG needed to be transported to a hospital. However, THOMAS made the decision to transport ARMSTRONG to the OPHU instead of a hospital. THOMAS failed to consult with a doctor before making the decision to not transfer ARMSTRONG to the hospital. Still, DURBIN failed to even transfer ARMSTRONG to the OPHU at this time. At approximately 3:31 p.m., members of the nursing staff informed Defendant Deputy RIVERA-VELAZQUEZ that Decedent needed to be transported to the Outpatient Housing Unit. However, there are no records that reflect that Defendant Deputy RIVERA-VELAZQUEZ acted upon this medical advice and Decedent remained in his cell without any care.

Defendants waited almost 24 hours, from the time Armstrong reported to Santa Rita jail to attempt to provide him with the medical care he desperately needed during his time of crisis while in Defendants' custody. Defendants recklessly disregarded Mr. Armstrong's behavior, which clearly reflected that he needed specialized medical care.

At approximately 6:30 p.m., Defendants finally began to transport Decedent to the Outpatient Housing Unit. Decedent was initially transported by Defendants PLOSSER, RIVERA-VELAZQUEZ and CALHOUN. Shortly after the transportation began, Decedent increasingly became more agitated

and distressed as Defendants CONSTANZO, DEVINE and GREEN joined the transportation. During transportation, Decedent continued to exhibit symptoms of paranoia and severe distress, resulting in him being reluctant to be taken out of his cell and walked to the Outpatient Housing Unit. At some point during transportation, Defendant Deputies slammed Armstrong down to the ground and began violently striking Decedent with their knees and feet.

Despite showing obvious signs of distress and paranoia, Decedent, while handcuffed behind his back and sitting in a L position, was asphyxiated by restraint, as the officers forced Decedent's upper body towards his feet, with Defendant deputies applying force on Decedent's head, neck, shoulder and back. Defendants then placed Decedent in a WRAP device. In addition, though he was not spitting, a spit mask was placed over Decedent's head.

Shortly thereafter, a nurse attempted to check Decedent's pulse and was unable to locate one. Despite resuscitation efforts, Decedent was pronounced deceased at 7:24 p.m. As stated in the Coroner's Report, Decedent died as a result of being asphyxiated by Defendants during restraint. Plaintiffs contend that Decedent was dead or dying when the spit mask was put on his face, and that Defendants placed the spit mask to conceal Decedent's actual medical condition, that Decedent was dead or dying.

To add further insult to injury, Alameda County Officials within the District Attorney's Office placed a "media hold" on the coroner's report, which prevented Plaintiffs from accessing the information for over a year. This report contains critical information that would have provided Decedent's family with answers regarding the circumstances surrounding their loved one's death. Instead, Plaintiffs were simply left to speculate for over one year regarding Decedent's death.

As a result of the Defendants' misconduct, the Plaintiffs suffered the loss of their loved one. Mr. Armstrong leaves behind his mother, and two children. As such, Mr. Armstrong's children are

entitled to recover damages incurred by Decedent before he died as a result of being denied his right to life and enjoyment of life, and to any penalties or punitive damages to which Decedent would have been entitled to recover had he lived, including damages incurred by Decedent, consisting of pain and suffering he endured during the time he struggled for his life, as a result of the violation of his civil rights.

**b. Defendants' Contention**

Wellpath, Inc., does not provide clinical care to patients at the jail. Rather, California Forensic Medical Group (CFMG) employs medical professionals to provide medical care to the prisoner population in the Santa Rita Jail. The Defendants, MICHAEL DURBIN, MICHAEL NARIA, MARIA SADRI, and NEENA THOMAS ("Medical Defendants") were all employed by CFMG and dedicated their time at CFMG to delivering medical care to incarcerated patients like Dujuan Armstrong within the jail.

This is a wrongful death action regarding an in-custody incident (and then later death) of Dujuan Armstrong ("Armstrong"), a twenty-three year old male, at the Outpatient Housing Unit ("OPHU") of the Santa Rita Jail (SRJ) on June 23, 2018. During transport to OPHU, Alameda County Sheriff Office ("ACSO") deputies used force to control Armstrong, including the deployment of the WRAP leg restraint and spit mask. Subsequent to the use of force, Armstrong died. The County Coroner determined that Armstrong tested positive for narcotics, and died of asphyxiation.

Prior to his incarceration at SRJ, Armstrong was convicted of burglary and sentenced to serve 120 days in jail. He was authorized to complete his jail time on weekends. On June 22, 2018, at 8:37 p.m., Armstrong arrived at the jail. Despite answering "no" to all medical questions, he was given a medical assessment. At 10:15 p.m., he was transferred to a "sobering" cell because of his behavior.

On Saturday, June 23rd, at 6:00 am, Armstrong admitted to a ACSO deputy that he was under the influence of narcotics—something the deputies had suspected based on Armstrong's behavior. On June 23rd at 7:30 am, staff completed a medical evaluation of Armstrong. Staff took a urine sample from Armstrong and tested it at 2:00 p.m. The sample tested positive for cocaine, methamphetamine and marijuana. Staff completed a medical assessment of Armstrong at 2:36 p.m. Nurse Garcia determined that Armstrong's vital signs were within normal limits and cleared him to join the jail's population and initiated drug withdrawal protocol. Later in the afternoon, staff moved Armstrong to the medical unit OPHU for further and close observation due to his continued bizarre behavior and positive urine test.

During Armstrong's transport to the OPHU, he physically resisted deputies while he was handcuffed. He attempted to walk in the opposite direction, pushed, and attempted to trip the ACSO deputies before trying to run. In order to control Armstrong and protect themselves, ACSO deputies used force. They took Armstrong to the ground and administered several fist and knee strikes to get him under control. Deputies also placed Armstrong into a WRAP—a lower body restraint device. Deputies tightened the WRAP's straps and put a spit mask on Armstrong. Then, Deputies put Armstrong on a gurney. While being wheeled to the OPHU on the gurney, Armstrong's pulse and breathing stopped. CPR/medical was then immediately administered. Armstrong was then taken to a hospital where he died at 7:23 pm—about 24 hours after he first arrived at SRJ.

On June 25th, Dr. Magat, the Medical Director of CFMG, opined that cardiopulmonary arrest was the preliminary cause of death. She noted that Armstrong was 5'11" and weighed 271 pounds. At intake, he appeared angry and uncooperative. His drug screen confirmed the presence of marijuana, cocaine, and methamphetamine. Dr. Magat also noted that Armstrong became increasingly agitated and resistive while being transported to OPHU, resulting in ACSO deputies using force to restrain him.

Dr. M. Ferenc, a forensic pathologist, completed Armstrong's autopsy. The coroner determined the cause of death was mechanical asphyxia with cardiac hypertrophy and obesity being listed as other conditions. The coroner further determined that, while the toxicological analysis confirmed drugs in Armstrong's system, they did not contribute to his cause of death. Notably, the coroner found that Armstrong had preexisting pulmonary congestion, cardiac hypertrophy and dilation, and borderline severe obesity. Combined with his severe obesity, preexisting heart issues, agitation, and physical exertion, Armstrong's toxicology results suggest that excited delirium possibly contributed/caused his death. The cause and manner of Armstrong's death will be a considerable issue in this matter. Medical Defendants deny the Plaintiffs' contentions in this matter. They assert that the care provided to Armstrong was appropriate and deny all allegations to the contrary.

Medical Defendants assert that the care provided to Armstrong was appropriate for the condition as presented by the patient and that there was no deliberate indifference to any serious medical need. Medical Defendants further contend that all care provided to Armstrong met appropriate standards, and nothing they did—or did not do—caused or contributed to Armstrong's death and Plaintiffs' alleged damages. Defendants contend at all times appropriate policies and procedures were in place.

**3. Facts**

The FAC currently asserts the following federal claims against the remaining Defendants: 1) Section 1983 violation of the Eighth Amendment – Armstrong's Right to be Free from Cruel and Unusual Punishment; 2) Section 1983 violation of Fourteenth Amendment – Plaintiffs' civil right to a

familial relationship. In addition, the FAC asserts the following state law claims: 1) violation of California Civil Code § 845.6; 2) negligence.

These claims raise at least the following issues:

• Whether Defendants by their acts, omissions, customs, and policies, acting in concert/conspiracy, violated Armstrong's rights to be free from deliberate indifference to his serious but treatable medical needs and/or access thereto; and to be free from wrongful government interference with familial relationships. (Cal. Civ. Code §§ 52 and 52.1.)

• Whether Defendants had a duty of care to Armstrong and whether they breached that duty to provide sufficient, competent, prompt medical care and/or access thereto.

• Whether Defendants' medical providers had a duty of care to Armstrong to provide him competent and reasonable medical care and treatment and/or access thereto, whether they breached that duty;

• Whether any Defendant caused, contributed or was a substantial moving factor in causing any of Plaintiffs' alleged damages or Armstrong's death.

• Whether any Defendant deprived Plaintiffs of their right to a familial relationship in violation of the Fourteenth Amendment.

• Whether and to what extent each separate Defendant is liable for general damages, treble damages and/or for punitive damages.

• The extent of Plaintiffs', Armstrong's and/or third parties' responsibility for Armstrong's and Plaintiffs' alleged injuries and damages, and the extent to which Plaintiffs', Armstrong's, and/or third parties' responsibility reduces any damages for which Defendants may be liable.

**4. Motions**

Plaintiffs anticipate filing motions *in limine*. Medical Defendants anticipate filing motions *in limine* and a motion for summary judgment and/or adjudication. Defendant Garcia remains represented by Bertling Law Group and will file a motion for summary judgment/summary adjudication, and motions *in limine*.

**5. Amendment of Pleadings**

Plaintiffs anticipate a need to amend the pleadings to add the Wellpath Liquidating Trust as a nominal defendant.

**6. Evidence Preservation**

Both Plaintiffs and Defendants are aware of their duty to preserve evidence and have taken steps to preserve all potentially relevant evidence.

**7. Disclosures**

The parties have made their initial disclosures.

**8. Discovery**

The Parties have engaged in written discovery. The parties have not yet completed depositions. CFMG Defendants have identified all the fact witnesses they will depose. These witnesses include: (1) Plaintiff Barbara Doss; (2) Plaintiff B.A., co-successor-in-interest to Decedent Dujuan Armstrong; (3) Lily Coleman, Guardian Ad Litem for Plaintiff B.A.; (4) Chastity Williams, Guardian Ad Litem for Plaintiff O.A.; and (5) the coroner who performed Decedent's autopsy, Dr. Michael Ferenc. The Parties have agreed that all of these depositions, except for Dr. Ferenc's, will take place on August 24 through August 26, 2026. The Parties expect that Dr. Ferenc's deposition will take place on September 9, 2026, pursuant to a subpoena to be served by CFMG Defendants.

Plaintiffs have identified all the fact witnesses they will depose. These witnesses include: (1) Michael Durbin; (2) Neena Thomas; (3) Maria Sadri; (4) Michael Naria; and (5) Guadalupe Garcia. The Parties have agreed that these depositions will take place between September 22, 2026 and October 1, 2026, which is conditional upon the Court adopting the proposed schedule outlined by the Parties in Section 18 ("Scheduling") below.

The parties do not anticipate the need for additional discovery beyond what is permitted by standard procedure but will approach the court if it becomes necessary to adjust these limits.

**9. Class Actions**

This is not a class-action matter.

**10. Related cases**

The Parties are unaware of any related cases.

**11. Relief**

Plaintiffs are seeking general, special, and punitive damages in an unspecified amount. Defendants are seeking a dismissal of the case with prejudice and the potential for recovery of costs and fees.

**12. Settlement and ADR**

The Parties attended a settlement conference on May 28, 2024, at 10:00 a.m. before Honorable Judge Laurel Beeler. The conference was brief and did not resolve the claims. Plaintiffs and Defendants are open to additional settlement discussions. Pursuant to the Court's Order in Docket No. 161, the Parties are to provide an update on settlement discussions. As noted below, fact discovery has not closed, and expert discovery has not started in earnest.

The Parties expect that after the conclusion of fact discovery, they will be able to engage in meaningful settlement discussions. They have selected the Honorable Laurel Beeler to conduct a

settlement conference, if she is able and willing, and respectfully request an Order assigning her to this case. As noted below, the Parties believe that a settlement conference deadline of February 1, 2027 is appropriate.

**13. Consent to Judge for All Purposes**

The Parties have not consented to a magistrate judge.

**14. Other Reference**

The Parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing of Issues**

None at this time.

**16. Expedited Schedule**

The Parties do not request an expedited schedule at this time.

**17. Bankruptcy**

Present Counsel for Medical Defendants became involved in this matter on July 25, 2024. [Dkt. 132]. On November 15, 2024, Wellpath Defendants filed a Suggestion of Bankruptcy and Notice of Stay. [Dkt. 148]. On December 3, 2024, the Court entered an Order staying proceedings in this matter. [Dkt. 150]. On May 9, 2025, Wellpath emerged from its Chapter 11 cases. [Dkt. 155]. On July 17, 2025, Wellpath Defendants filed their Notice of Discharge and Injunction. [Dkt. 156].

On January 25, 2026, the Bankruptcy Court issued the *Revised and Amended Clarifying Order Enforcing (A) The First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. And Certain of Its Debtor Affiliates, and (B) The Trust Distribution Procedures*. (the "Clarification Order"). Pursuant to the Clarification Order ¶ 2, the Bankruptcy Court clarified that "the Plan does not permit any party to proceed against the Post-Restructuring Debtors or any Debtor, … in any capacity,

including as a nominal defendant." The Clarification Order still permits holders of General Unsecured Claims arising from alleged pre-petition personal injury tort or wrongful death to liquidate the value of those claims in the courts where they remain pending, however with the Liquidating Trust substituted in place of the Wellpath debtor-defendants. Pursuant to the Clarification Order, ¶ 1, "In accordance with Article IV.J of the TDPs, Holders of General Unsecured Claims arising from alleged pre-petition personal injury tort or wrongful death may 'proceed in the appropriate civil court and litigate such claim with the [Trust] included as a nominal defendant.'"

To that end, the Plaintiffs anticipate adding the Wellpath Liquidating Trust as a nominal defendant.

**18. Scheduling:**

On March 26, 2026, the Court entered the following pretrial litigation schedule [Dkt. 164]:

| | |
|---|---|
| Close of non-expert discovery: | September 10, 2026 |
| Expert Disclosure: | October 9, 2026 |
| Rebuttal Expert Disclosure: | December 8, 2026 |
| Close of expert discovery: | January 8, 2027 |
| Deadline to file dispositive motions: | February 26, 2027 |
| Pretrial conference: | TBD |
| Trial: | TBD |

As noted above, CFMG Defendants have identified all the fact witnesses they will depose. These witnesses include: (1) Plaintiff Barbara Doss; (2) Plaintiff B.A., co-successor-in-interest to Decedent Dujuan Armstrong; (3) Lily Coleman, Guardian Ad Litem for Plaintiff B.A.; (4) Chastity Williams, Guardian Ad Litem for Plaintiff O.A.; and (5) the coroner who performed Decedent's autopsy, Dr. Michael Ferenc. The Parties have agreed that all of these depositions, except for Dr.

Ferenc's, will take place on August 24 through August 26, 2026. The Parties expect that Dr. Ferenc's deposition will take place on September 9, 2026, pursuant to a subpoena to be served by CFMG Defendants.

Plaintiffs have identified all the fact witnesses they will depose. These witnesses include: (1) Michael Durbin; (2) Neena Thomas; (3) Maria Sadri; (4) Michael Naria; and (5) Guadalupe Garcia. The Parties have agreed, if this Court adopts the proposed schedule outlined below, that these depositions will take place between September 22, 2026 and October 1, 2026.

The proposed schedule is based on the availability of witnesses, expected timelines of securing third-party witnesses through subpoena, and the trial schedule of counsel for Guadalupe Garcia.

Additionally, as noted above, the proposed schedule includes a settlement conference deadline based on the Parties selection of the Honorable Judge Beeler to conduct such conference. Also noted above, the Parties respectfully request that the Court enter an Order assigning Judge Beeler to preside over the conference.

The Parties respectfully request that the Court adopt the following schedule:

| | |
|---|---|
| Close of non-expert discovery: | January 7, 2027 |
| Settlement Conference: | February 1, 2027 |
| Expert Disclosure: | March 25, 2027 |
| Rebuttal Expert Disclosure: | April 29, 2027 |
| Close of expert discovery: | May 27, 2027 |
| Deadline to file dispositive motions: | July 26, 2027 |
| Pretrial conference: | TBD |
| Trial: | TBD |

**19. Trial:**

The parties have demanded a jury trial, expected to last approximately 10-14 days.

**20. Disclosure of Non-Party Interested Entities or Persons:**

Plaintiffs: None.

Defendants: CFMG.

**21. Other Matters**

None.

Dated: July 24, 2026

**THE LAW OFFICES OF JOHN L. BURRIS**

/s/ *James Cook*

Ben Nisenbaum, Esq.
James Cook, Esq.
Attorneys for Plaintiffs

Dated: July 24, 2026

**BERTLING LAW GROUP**

/s/ *Peter G. Bertling*

Peter G. Bertling
Attorney for Defendant
Guadalupe Garcia

Dated: July 24, 2026

**GORDON REES SCULLY MANSUKHANI, LLP**

/s/ *Kendra N. Stark*

Kendra Stark
Lindsey Romano
Austin R. Kessler
Attorneys for Defendants Wellpath, Inc., Michael Durbin, Michael Naria, Maria Sadri, and Neena Thomas

The Court adopts the joint case management statement. Case Management Conference set for July 31, 2026 is vacated. A Joint Case Management Statement due by January 15, 2027. Case Management Conference set for January 22, 2027 at 8:30 a.m. by video conference. The parties shall coordinate a settlement conference before Magistrate Judge Laurel Beeler.

Date: July 27, 2026

UNITED STATES DISTRICT COURT
IT IS SO ORDERED
Judge Charles R. Breyer
NORTHERN DISTRICT OF CALIFORNIA